```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

JAMES SHACKLEFORD,

    Plaintiff,

v.                                  Case No. 8:15-cv-407-T-33TBM

SAILOR'S WHARF, INC.

    Defendant.

_____/

## ORDER

This matter comes before the Court upon Defendant Sailor's Wharf, Inc.'s Motion for Partial Summary Judgment (Doc. # 23) filed on April 29, 2016. Plaintiff James Shackleford filed a response in opposition to the Motion on May 31, 2016. (Doc. # 26). For the reasons that follow, the Court grants Sailor's Wharf's Motion for Partial Summary Judgment.

### I. Background

Shackleford is the owner of Sea the World, a 1981 65' Irwin Sailboat which was insured with Continental Casualty Company. (Id.; Doc. # 23-2; Doc. # 23-5). On May 16, 2011, Shackleford and Sailor's Wharf entered into a Service Contract under which Sailor's Wharf agreed to "haul and [block]" the vessel, and to repair damages caused by a

lightning strike. (Doc. # 23-2). During the course of the repairs, Shackleford alleges Sailor's Wharf "improperly attempted to remove the vessel from the water using an insufficient number of straps for a vessel of the size and weight of 53 gross tonnage." (Doc. # 1 at ¶ 7). This allegedly prevented the weight of the vessel from being evenly distributed, causing a break in the spine of the vessel. (Id. at ¶ 8). Shackleford also alleges "repairs done by Sailor's Wharf have failed, were not performed, or were not performed in a workmanlike manner" (Id. at ¶ 9) and that Sailor's Wharf "caused extensive damage to the decking and other areas of [Shackleford's] vessel." (Id. at ¶ 10). Shackleford alleges the damages caused to the spine, decking and other areas of Sea the World have caused "substantial damages to the vessel, loss of use of the vessel, loss of repairs, refurbishments, and upgrades [Shackleford] made to the vessel." (Id. at ¶ 19). Additionally, Shackleford claims Sailor's Wharf breached the terms of the Service Contract by charging over $50,000 more than the amount Shackleford agreed to pay under the contract. (Id. at ¶ 25).

Before filing this lawsuit against Sailor's Wharf, Shackleford filed two claims against his insurance policy with Continental. (Doc. # 23 at 3). The first claim sought

2

compensation for damages caused by a lightning strike on May 14, 2011. (Id.). The second claim sought relief for damages allegedly caused by Sailor's Wharf while the vessel was undergoing repairs under the Service Contract. (Id.). Continental paid Shackleford a total of $512,811.39 in compensation for the two claims: $236,317.27 attributable to the "lightning strike" claim; and $276,494.02 for the "Sailor's Wharf" claim. (Id. at 4). Shackleford contends this amount pays for "part of the damages caused by Sailor's Wharf" and now seeks relief from Sailor's Wharf for the remaining damages. (Doc. # 1 at ¶ 13). In November of 2014, Continental and Shackleford entered into a Settlement Agreement and General Release in which Continental relinquished its subrogation rights to the lightning strike and Sailor's Wharf claims and assigned the rights to Shackleford. (Doc. # 23-7 at ¶¶ 3, 7).

Shackleford filed a three-count complaint against Sailor's Wharf on February 26, 2015, alleging (1) Negligence, (2) Breach of Contract, and (3) Subrogation. (Doc. # 1 at ¶¶ 18, 26, 34). Additionally, Shackleford claims he is entitled to compensation for loss of use of the vessel under Counts I, II, and III as well as the payment of attorney's fees. (Id. at ¶¶ 19, 26, 31, 35). Sailor's Wharf argues that it is

3

"entitled to partial summary judgment on Count I, Count III, and Plaintiff's claims for loss of use damages and attorney fees." (Doc. # 23 at 9).

## II. **Legal Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly plead motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. Mike v. Jefferson City. Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there is no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357

4

F.3d 1256, 60 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then go 'beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 64 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 30 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional

5

allegations," summary judgment is not only proper, but required." Morris v. Ross, 663 F.2d 1032, 34 (11th Cir. 1981).

### III. Analysis

Shackleford's claims against Sailor's Wharf arise out of a vessel repair contract. (Doc. # 1 at ¶¶ 15-35). As such, general maritime law governs the claims. See Diesel "Repower," Inc. v. Islander Invs. Ltd., 271 F.3d 1318, 1323-1324 (11th Cir. 2001)("A contract to repair a vessel invokes admiralty jurisdiction").

#### A. Attorney's Fees

While Shackleford originally sought attorney's fees, (Doc. # 1 at ¶ 35), he has withdrawn his claim to attorney's fees. (Doc. # 26 at 8). Sailor's Wharf's Motion for Summary Judgment is accordingly mooted on this point.

#### B. Count I: Negligence

Shackelford alleges Sailor's Wharf owed a duty of care "to extract [Shackleford's] vessel in such a manner and place so as to not cause damage to [the] vessel." (Doc. # 1 at ¶ 16). Further, Shackleford argues Sailor's Wharf breached this duty by

a) failing to use a sufficient number of straps in order to distribute the weight of the vessel evenly [;]

      b) failing to use a sufficient number of straps to accommodate the weight and size of the Plaintiff's vessel [;]
      c) failing to pump out the vessel prior to attempting to lift the Plaintiff's vessel [;]
      d) failing to adequately block and set the Plaintiff's vessel [; and]
      e) failing to protect the flooring, decking, woodwork, and other fixtures on the vessel which were damaged by the Defendant's employees or agents acting at the direction of the Defendant.

(Id. at ¶ 17).

As a result, Shackleford alleges he suffered "substantial damage to the vessel, loss of use of the vessel, loss of repairs, refurbishments, and upgrades [Shackleford] made to the vessel." (Id. at ¶ 19).

Sailor's Wharf argues the negligence count should be dismissed because tort-based negligence claims "involving alleged improper repairs to a vessel performed pursuant to a written contract" are precluded by general maritime law. (Doc. # 23 at 4). Sailor's Wharf's theory is grounded in the Economic Loss Rule, "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004).

Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective

7

product, or consequent loss of profits – without any claim of personal injury or damage to other property." <u>Tiara Condo. Assoc., Inc. v. Marsh & McLennan Cos., Inc.</u>, 714 F.3d 1253, 1256 (11th Cir. 2013). Economic losses, in essence, are "disappointed economic expectations which are protected by contract, law rather than tort law." <u>Id.</u> (Internal citation omitted).

The Economic Loss Rule originated in products liability "to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." <u>Id.</u> at 1258. In restricting economic-loss damages to breach of contract claims, manufacturers may limit their own liability "by disclaiming warranties or limiting remedies . . . [i]n exchange, the purchaser pays less for the product." <u>E. River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 873 (1986).

Since then, the Rule has been extended beyond products liability to "maritime cases involving parties other than manufacturers." <u>La. Mach. Co., LLC v. Devon Shipping, Inc.</u>, No. 3:09-cv-957-J-32JRK, 2010 WL 1523032, at *2 (M.D. Fla. Apr. 15, 2010). The Rule in its current form applies in two sets of situations. First, the Rule applies where "there is a defect in a product that causes damage to the product but

8

causes no personal injury or damage to other property." Indem. Ins. Co. of N. Am., 891 So. 2d at 536. Second, it applies where "the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." Id. Where the parties are in privity, "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." Id. at 537.

In the time since the Economic Loss Rule has been extended to non-products liability disputes in maritime law, the doctrine has been sharply receded from under Florida state law. In 2013, the Eleventh Circuit "limit[ed] the application of the economic loss doctrine to cases involving products liability." Tiara Condo. Assoc., 714 F.3d at 1263. However, "no such limitation has been imposed in cases governed by maritime law." R/V Beacon, LLC v. Underwater Archeology & Expl. Corp., No. 14-CIV-22131, 2014 WL 4930645, at *5 (S.D. Fla. Oct. 1, 2014). As such, this Court must look to the Economic Loss Rule as applied under federal maritime law to resolve the pending dispute.

The Economic Loss Rule at maritime law "provides that a tort action may not lie where the basis for liability arises from a contract." Id. Partitioning claims in contract law

9

from those of tort helps prevent contract law from "[drowning] in a sea of tort." E. River S.S. Corp., 476 U.S. at 866.

Sailor's Wharf argues the Economic Loss Rule, as recognized by general maritime law, precludes negligence claims in this instance because "the damages complained of relate solely to the vessel, not 'other property' outside the scope of the Service Contract." (Doc. # 23 at 5). As such, claims pertaining to the vessel arise out of the Service Contract and should be brought under claim for breach of contract, and not as a negligence claim. Additionally, Sailor's Wharf asserts Count I is merely a restatement of Count II, and should accordingly be dismissed as a duplicative count. (Id.).

Shackleford counters that the negligence claim enumerated in Count I of the Complaint alleges damages in addition to those spawning from the breach of contract claim. In support of this view, Shackleford contends the parts of the vessel that were damaged, but unrelated to the parts contracted to be repaired, constitute "other property" unprotected by the Economic Loss Rule. (Doc. # 26 at 8). As the negligence claim encompasses damages to parts of the vessel wholly distinct from those Sailor's Wharf was hired to

repair, Shackleford argues the negligence claim is not barred under the Economic Loss Rule.

Little precedent exists delineating the border between "property" and "other property" under the Economic Loss Rule in Service Contracts governed by maritime law. However, there is substantial precedent defining "property" and "other property" in a products liability context that is instructive on this issue.

East River is particularly illuminating. There, plaintiffs purchased four turbines from defendant, which contained component parts that malfunctioned, causing damage only to the turbines themselves. E. River S.S. Corp., 476 U.S. at 859-860. Plaintiffs brought negligence and strict liability claims seeking relief from the injury. Id. at 861. In rejecting the plaintiffs' negligence claim, the Court classified the turbines and the component parts as "property," thereby barring the claims for damages to the turbines under the Economic Loss Rule. Id. at 867. The Court reasoned that because each turbine was bargained for as an "integrated package . . . each is properly regarded as a single unit." Id. Furthermore, a fundamental purpose of the contract was to purchase turbines that functioned properly. Id. at 868-69. Therefore, failure to receive functioning

turbines was best brought as a breach of warranty given "the injury suffered – the failure of the product to function properly – is the essence of a warranty action." Id. at 868.

As in East River, this Court must look to the object of the contract as the starting point to determine what constitutes "property" for the purposes of the Economic Loss Rule. See Ice Fern Shipping Co. v. Golten Serv. Co., No. 1:04-CV-20741, 2005 WL 3692840, at *3 (S.D. Fla. Mar. 22, 2005) ("In determining whether an item constitutes other property, one must look to the object of the bargain")(internal citation omitted). In East River, and other products liability cases, the object of the bargain is normally the product contracted for. See E. River S.S. Corp., 476 U.S. at 867-869; see also Sbarbaro v. Yacht Sales Int'l, Inc., 1996 A.M.C. 133, 141 (S.D. Fla. 1995)(holding, where Sbarbaro contracted to purchase a yacht, the yacht constituted property for the purposes of the Economic Loss Rule); Sea-Land Serv. v. Gen. Elec. Co., 134 F.3d 149, 154 (3rd Cir. 1998)(concluding, where the parties contracted to replace engine rods that failed causing damage to the engine, the engine rods constituted property).

Here, Sailor's Wharf agreed, in signing the Service Contract, to "haul and block" the vessel Sea the World, and

12

repair damages caused by a prior lightning strike. (Doc. # 23-3). The damage caused to the spine of the vessel occurred as a direct result of Sailor's Wharf improperly performing part of the object of the contract, hauling and blocking the vessel. Consequently, the damage to the spine of the vessel constitutes damage to "property" within the context of the Economic Loss Rule.

Damage to other parts of the vessel during the allegedly faulty repairs is more difficult to classify. The object of this portion of the contract is to repair damages caused by a lightning strike. (Doc. # 23-3). However, it is unclear what specific damage the lightning caused, and what parts of the vessel Sailor's Wharf was hired to repair. The claim Shackleford filed with Continental to recover damages from the lightning strike indicates the mast of the vessel and other parts of the ship may have been damaged by the lightning. (Doc. # 23-5). Additionally, Shackleford's complaint seeking compensation from Continental for faulty repairs done by Sailor's Wharf evidences the vessel suffered scratched floors, a cracked deck, and damage to the hull side paint while in Sailor's Wharf's custody. (Id.). Therefore, it is uncertain what specific parts of the vessel were contracted to be repaired, and whether the damage caused by Sailor's

Wharf occurred to those parts of the vessel. Furthermore, it is uncertain whether the damage to the vessel occurred during the course of performing the repairs, or merely while the vessel was within Sailor's Wharf's control.

Recognizing these issues, the Court nevertheless finds that it is not obligated to partition the vessel into "property" and "other property" to grant summary judgment in favor of Sailor's Wharf on Shackleford's negligence claim. "When an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship." BVI Marine Constr. Ltd. v. ECS-Fla., LLC, No. 12-80224-CIV, 2013 WL 6768646, at *4 (S.D. Fla. Dec. 20, 2013). The Economic Loss Rule, as in force under federal maritime law, clearly bars "contract action[s] couched as tort claim[s]." R/V Beacon, LLC, 2014 WL 4930645, at *5. As all the damages alleged in the negligence claim are also alleged in the breach of contract claim (Doc. # 1 at ¶¶ 15-26), Shackleford's tort action constitutes a breach of contract claim masquerading as negligence. See Indem. Ins. Co. of N. Am., 891 So. 2d at 536 (citing Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994)("Where damages sought in tort are the same as those for

14

breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort")).

For the foregoing reasons, Sailor's Wharf is entitled to summary judgment on Count I of Shackleford's Complaint.

**C.    Count III: Subrogation**

Sailor's Wharf contends the subrogation claim should be dismissed as "simply a repetition of Count II with a different label." (Doc. # 23 at 2). Shackleford disagrees, and argues Continental validly assigned him rights to pursue relief for damages caused by Sailor's Wharf. (Doc. # 26 at 9); (See also Doc. # 23-7).

"Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1287 (11th Cir. 2007).

Shackleford correctly asserts there is no prohibition in maritime law with assignments involving insurance claims in the maritime context. See generally Caribe Carriers, Ltd. v. C.E. Health & Co., 784 F. Supp. 1119, 1119 (S.D.N.Y. 1992)(vessel owner assigned insurance claims for deferred repairs to the vessel). Furthermore, injured parties that

15

have been assigned subrogation rights may seek relief from at fault third parties, even if they already received compensation under an insurance policy. See Despointes v. Fla. Power Corp., 2 So. 3d 360, 361 (Fla. 2nd DCA 2008) (holding homeowner assigned subrogation rights had standing to bring a claim against the manufacturer of a faulty surge protector, despite having already been compensated by her insurance company for the property damage).

However, Shackleford mischaracterizes the nature of claims brought under subrogation. A subrogated insurer "stands in the shoes of an insured, and has no rights greater than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." Steven Plitt et. al., Couch on Insurance 3d § 222:5 (2016). "Since the right of subrogation is purely derivative, and the insurer succeeds only to the rights to the insured, no new cause of action is created." Couch on Insurance 3d § §222.14 (2016). Therefore, the assignment of subrogation rights merely entitles Shackleford to bring claims he would have been able to bring against Sailor's Wharf for damages to Sea the World had the vessel not been insured. This encompasses the breach of contract claim Shackleford brings in Count II of the

Complaint, and does not permit him to bring a separate claim of contractual subrogation.

Accordingly, this Court finds Sailor's Wharf is entitled to summary judgment on Count III.

**D.     Loss of Use Alleged in Counts I, II, and III**

Sailor's Wharf argues Shackleford is not entitled to loss of use damages because Sea the World a pleasure craft with no history business use. Sailor's Wharf also contends that such damages are prohibited because the vessel is a constructive total loss. As explained below, the Court finds that Shackleford is not entitled to loss of use damages because the vessel is a private pleasure vessel. It is not necessary to address the disputed issue of whether the vessel is a constructive total loss.

In The Conqueror, 166 U.S 110, 117 (1897), the Supreme Court held that loss of use damages are generally prohibited for pleasure vessels. See Zepsa Indus., Inc. v. Kimble, No. 3:08-civ-4, 2008 WL 4891115, at *3 (W.D.N.C. Nov. 11, 2008)("The Conqueror [stands] for the proposition that loss of use damages for pleasure vessels is prohibited under admiralty law"); see also Frichelle Ltd. v. Master Marine, Inc., 99 F. Supp. 2d 1337, 1347 (S.D. Ala. 2000) ("[t]he owner of a purely private pleasure vessel may not recover damages

17

for 'loss of use' to compensate for the deprivation of the owner's personal enjoyment of the vessel"). "[D]emurrage will only be allowed when profits have actually been, or may reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty." The Conqueror, 166 U.S at 125; see also Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc., 206 F.3d 1373, 1376 (11th Cir. 2000)(holding the owner of a pleasure vessel was not entitled to damages for loss of use for failing to show lost profits with reasonable certainty).

Shackleford attempts to avoid summary judgment by asserting that the issue of whether profits were reasonably expected is an issue of fact that should be resolved at trial. However, there is no evidence that Shackleford expected profits with reasonable certainty. See Cent. State Transit & Leasing Corp., 77 F.3d at 376 (granting defendant's motion for summary judgment as to damages for loss of use on the grounds that the loss of use suffered "cannot be determined with any certainty"); In re Petition of Neptune Ventures, LLC, No. 08cv1230, 2010 WL 255581, at *1 (D. Conn. Jan. 15, 2010)(granting motion for summary judgment finding plaintiff was not entitled to compensation for loss of use of a private vessel).

The burden is on the vessel owner to prove with reasonable certainty that profits had actually been, or may reasonably be supposed to have been, lost. See Frichelle Ltd., 99 F. Supp. 2d at 1347. "The owner must prove, not only the opportunity to charter the vessel, but also that he would have availed himself of the opportunity." Id.

Here, Shackleford failed to meet his burden. Sea the World is registered with the Coast Guard as a vessel for "Recreation" (Doc. # 23-1) and has no history of commercial use. Shackleford grounds his calculations for lost profits on "normal charter rates in Hawaii for a similar vessel" on the basis that he intends to make future commercial use of Sea the World under a newly founded Hawaiian Corporation. (Doc. # 23-9 at ¶ 11). These allegations are insufficient for Shackleford to show with reasonable certainty profits would have been lost. See Gladsky v. Sessa, No. CV 06-3134, 2007 WL 2769494, at *5 (E.D.N.Y. Sept. 21, 2007)("[w]here a pleasure craft, such as defendant's, has no history of income, the owner is not entitled to damages for the loss of its use").

For the preceding reasons, the Court grants Sailor's Wharf's Motion for Partial Summary Judgment with respect to the damages for loss of use.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Shackleford's claims for attorney's fees are **WITHDRAWN.**

(2) Summary Judgment is granted as to Shackleford's negligence claim, which is asserted in Count I of the Complaint. (Doc. # 1 at ¶¶ 15-19).

(3) Summary Judgment is granted as to Shackleford's subrogation claim, which is asserted in Count III of the Complaint. (Id. at ¶¶ 27-35).

(4) The Court finds Shackleford is not entitled to damages for loss of use of Sea the World as alleged in Counts I, II, and III (Id. at ¶¶ 19, 26, and 31).

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of August, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE